**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| 5205 Lincoln LLC, | No. CV-19-05218-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Owners Insurance Company, | |
| Defendant. | |

At issue are Plaintiffs' Motion for Summary Judgment Re Collapse Coverage (Doc. 59, Pls.' MSJ), to which Defendant filed a Response (Doc. 73, Def.'s Resp.) and Plaintiffs filed a Reply (Doc. 80, Pls.' Reply); and Defendant's Cross-Motion for Partial Summary Judgment Re Coverage Issues (Doc. 61, Def.'s MSJ), to which Plaintiffs filed a Response (Doc. 74, Pls.' Resp.) and Defendant filed a Reply (Doc. 79, Def.'s Reply). The Court finds these matters appropriate for resolution without oral argument. LRCiv 7.2(f).

**I.     BACKGROUND**

Plaintiffs 5205 Lincoln, LLC, Capstone Properties, LLC, and Phil McClanahan, trustee of the PEMR Trust, own a commercial center located in Paradise Valley, Arizona, and consisting of three buildings—the northeast building, the northwest building, and the rear building. On October 21, 2018, a storm caused the roof on the northeast building to collapse. Three Generations, LLC, dba Stevan's Consignment ("Tenant") leased the northeast and northwest buildings, and after the roof collapsed, Tenant stopped paying rent under the lease agreement until repairs were substantially complete. When such repairs

were not complete by April 11, 2019, Tenant declared constructive eviction and terminated the lease for both buildings.

Plaintiffs entered into an insurance agreement for all three buildings with Defendant Owners Insurance Company, and the single Policy included liability and property coverage for all three buildings. The day after the roof collapse, Plaintiffs reported a claim with Defendant, and Defendant in turn determined that the roof collapse was covered under a "Collapse" provision of the Policy.

Because the parties could not agree on the extent of coverage under the Policy, Plaintiffs brought this lawsuit raising three claims against Defendant: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; and (3) insurance bad faith. (Doc. 36, Am. Compl.) With regard to coverage, Plaintiffs claim repair costs, lost rent not paid by Tenant on both buildings, the expenses incurred in finding a replacement tenant, and the lost value of the property. Defendant contends that the Policy only covers the damage to the northeast building resulting from the roof collapse and business income loss resulting from that damaged building and for a limited period of time. While a determination of the amount of loss is a question for the factfinder, each party now moves for summary judgment on the question of the extent of coverage under the Policy.

## II.     LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when: (1) the movant shows that there is no genuine dispute as to any material fact; and (2) after viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288–89 (9th Cir. 1987). Under this standard, "[o]nly disputes over facts that might affect the outcome of the suit under governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact arises only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence, if it is supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. However, the non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Anderson*, 477 U.S. at 256–57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

"A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *United States v. Carter,* 906 F.2d 1375, 1376 (9th Cir. 1990) (quoting *Celotex*, 477 U.S. at 322).

## III. ANALYSIS

The Arizona Court of Appeals has stated, "In interpreting an insurance contract, we look first to the policy language. We construe the provisions of an insurance policy according to their plain and ordinary meaning." *Lennar Corp. v. Auto-Owners Ins. Co.*, 151 P.3d 538, 546 (Ariz. Ct. App. 2007) (internal quotations and citations omitted).

### A. The Extent of "Loss or Damage" Covered

Coverage for loss or damage arising from the collapse of the northeast building's roof is provided in a portion of the Policy entitled "Businessowners Special Property Coverage Form." (Doc. 60-10, Policy at PT00099–119, Property Coverage Form at 1 of 21.) Section A, entitled "Coverage," first provides that Defendant "will pay *for direct physical loss of or damage to* Covered Property at the premises described in the Declarations by or resulting from any Covered Cause of Loss." (Property Coverage Form at 1 of 21 (emphasis added).) Section A, Subsection 3, entitled "Covered Causes of Loss" (Property Coverage Form at 2 of 21), refers to Section B, "Exclusions," which explicitly

excludes coverage for "Collapse, except as provided in the Additional Coverage for Collapse" (Property Coverage Form at 9 of 21). Section A, Subsection 5, entitled "Additional Coverages"—and to which the original Coverage clause "*for direct physical loss of or damage to*" still applies—provides coverage for Collapse in Subsection (d), namely, "for loss or damage caused by or resulting from risks of direct physical loss involving collapse of a building or any part of a building" caused by conditions that the parties agree apply here. (Property Coverage Form at 4 of 21.)

Plaintiffs ask the Court to consider the Additional Coverage in Section A, Subsection 5 as somehow independent from Section A, Coverage. That is simply not how the Policy is written. The Property Coverage Form explicitly provides Coverage by way of payment "*for direct physical loss of or damage to* Covered Property." The fact that a subsection of the Coverage section providing Collapse Coverage refers to "loss or damage" without the words "direct physical" does not negate the overall limitation—laid out at the very beginning of the Coverage section and applicable to the proceeding subsections—of payment for "direct physical loss or damage." Plaintiffs' proposed reading is not a plain reading, but rather takes the Collapse Coverage subsection out of the context of the very Coverage section it falls under. Because it is long established under Arizona law—and a basic tenet in construing an agreement—that a policy "must be read as a whole in order to give a reasonable and harmonious meaning and effect to all of its provisions," *Droz v. Paul Revere Life Ins. Co.*, 405 P.2d 833, 835 (Ariz. Ct. App. 1965), the Court finds as a matter of law that the Coverage section of the Policy limits Defendant's obligation to payment for "direct physical loss of or damage to Covered Property" resulting from the roof collapse, up to the Limits of Insurance as provided in the Policy. (Property Coverage Form at 1 of 21.)

### B. Diminished Value of the Property

As part of Defendant's payment for direct physical loss of or damage to the covered property, Plaintiffs claim both the cost of repairs to the roof and the diminution of value of the property. Defendants correctly argue that Plaintiff cannot seek both. *E.g.*, *Johnson v. State Farm Mut. Auto. Ins. Co.*, 754 P.2d 330, 331 (Ariz. Ct. App. 1988) (noting the policy

at issue did not include language requiring the insurer to pay the insured the difference in value in the covered property before and after the covered event). Because Plaintiffs point to no language in the Policy supporting their diminution of value claim, Plaintiffs cannot seek such payment above and beyond their request for repair costs.

### C. Business Income

Continuing in the Businessowners Special Property Coverage Form, Section A, Subsection 5, Additional Coverages, the Policy states under Subsection (f), entitled "Business Income," as follows:

> We will pay for the actual loss of Business Income you sustained due to the necessary suspension of your "operations" during the "period of restoration." The suspension must be caused by direct physical loss of or damage to property at the described premises, including personal property in the open (or in a vehicle) within 100 feet, caused by or resulting from any Covered Cause of Loss.
>
> We will only pay for loss of Business Income that occurs within 12 consecutive months after the date of direct physical loss or damages. This Additional Coverage is not subject to the Limits of Insurance.
>
> Business Income means the:
> (1) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and
> (2) Continuing normal operating expenses incurred, including payroll.

(Property Coverage Form at 4–5 of 21.)

Aside from their argument that the Collapse Coverage subsection of the Policy provides coverage for *any* loss or damage arising from the roof collapse—a notion the Court dispelled above—Plaintiffs argue that the Business Income subsection covers lost rent not just for the northeast building with the collapsed roof but for the northwest building too. With this proposition, the Court agrees.

Suspension of operations, by way of an inability to rent to Tenant, occurred in both the northeast and northwest buildings because Tenant's business occupied both and was unable to continue after the roof collapse. Nothing in the language of the Business Income subsection limits Plaintiffs' recovery for Business Income losses sustained only with

1  regard to rental of the northeast building. And Arizona courts have recognized the concept
2  of mutual dependency—here, that the northeast and northwest buildings were mutually
3  dependent on one another for their operation—in determining coverage for a suspension of
4  business resulting from a covered cause of loss. *Aztar Corp. v. U.S. Fire Ins. Co.*, 224 P.3d
5  960, 969–70 (Ariz. Ct. App. 2010). This is especially so in this instance because, as
6  Plaintiffs point out, one Policy covers all three buildings on the premises.

7  But Plaintiffs are incorrect in stating that the Policy does not limit recovery of lost
8  rent to the period of restoration. The Business Income subsection expressly limits coverage
9  for lost rent to the period of restoration or 12 months, whichever is shorter. (Property
10 Coverage Form at 4–5 of 21.) Likewise, to the extent Plaintiffs attempt to rely on
11 Subsection (g), entitled "Extra Expense," Defendant must only pay for Extra Expense
12 during the period of restoration or up to 12 months. (Property Coverage Form at 5 of 21.)

13 Plaintiffs also argue that the Policy's limitation of payment for lost Business Income
14 only during the period of restoration (up to 12 months) is not enforceable if the insurance
15 company delayed payment. The Court agrees that the determination of the period of
16 restoration is a question of fact. As the Ninth Circuit pointed out in *Igenco Holdings, LLC*
17 *v. Ace Am. Ins. Co.*, 921 F.3d 803, 820–21 & n.21 (9th Cir. 2019), determining the period
18 of restoration in order to calculate payment due under a policy involves consideration of a
19 number of factors, including the actual time of repair, the reasonableness of that time of
20 repair, "what period would be required with the exercise of diligence and dispatch to
21 rebuild or replace damaged property," and any extension to the period of restoration
22 resulting from an insurer's failure to adjust a loss within a reasonable period of time. Thus,
23 although the Policy limits Business Income coverage to the period of restoration (up to 12
24 months), a factfinder must determine the period of restoration. In any instance, Business
25 Income coverage does not go past 12 months from the date of the roof collapse under the
26 plain language of the Policy.

27 **D.  Consequential Damages**
28 Finally, the parties disagree as to whether the Policy allows coverage for

consequential damages such as Plaintiffs' time and expense in dealing with the roof collapse and real estate broker fees Plaintiffs paid. Under Section B, Exclusions, on the Special Property Coverage Form, Subsection 4 provides for "Business Income and Extra Expense Exclusions." (Property Coverage Form at 9 of 21.) That provision states, "We will not pay for . . . any other consequential loss." Thus, the Court agrees with Defendant that, to the extent Plaintiffs' claim is comprised of consequential loss beyond the Business Income and Extra Expense payments explicitly provided for in Subsections A(5)(f) and (g) of the Businessowners Special Property Coverage Form, the Policy does not cover such loss.

## IV. CONCLUSIONS

The plain language of the Policy provides for payments for *direct physical* loss of or damage to the covered property, including for the collapsed roof of the northeast building. Such loss or damage payments do not include payment of both repair costs and diminution in value. Plaintiffs are entitled to lost Business Income for the period of restoration—the length of which is a question of fact—but the covered period does not exceed 12 months from the date of the roof collapse. Nothing in the Policy excludes payment for lost Business Income for both the northeast and northwest buildings; those buildings were mutually dependent on each other for their operation. Plaintiffs may not seek payment for consequential loss beyond the Business Income and Extra Expense payments for which the Policy explicitly provides.

**IT IS THEREFORE ORDERED** granting in part and denying in part Plaintiffs' Motion for Summary Judgment Re Collapse Coverage (Doc. 59).

**IT IS FURTHER ORDERED** granting in part and denying in part Defendant's Cross-Motion for Partial Summary Judgment Re Coverage Issues (Doc. 61).

**IT IS FURTHER ORDERED** that this matter will proceed to trial, and the Court will set a pre-trial conference by separate Order.

Dated this 27th day of September, 2021.

Honorable John J. Tuchi
United States District Judge