**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| 5205 Lincoln LLC, *et al.*, | No. CV-19-05218-PHX-JJT |
| Plaintiffs, | **ORDER** |
| v. | |
| Owners Insurance Company, | |
| Defendant. | |

At issue is the admissibility of expert testimony on behalf of both Plaintiffs and Defendant. The Court considers Plaintiffs' *Daubert* Motion re Kevin Hromas (Doc. 98, Pls.' Mot.), to which Defendant filed a Response (Doc. 102, Def.'s Resp.), and Plaintiffs filed a Reply (Doc. 104, Pls.' Reply); and Defendant's Motion to Exclude Opinions and/or Testimony of Peter Kochenburger (Doc. 101, Def.'s Mot.), to which Plaintiffs filed a Response (Doc. 103, Pls.' Resp.), and Defendant filed a Reply (Doc. 107, Def.'s Reply). The Court finds this matter appropriate for decision without oral argument. LRCiv 7.2(f).

## I.    BACKGROUND

As the Court laid out in its previous Order (Doc. 108, Order at 1–2), Plaintiffs 5205 Lincoln, LLC, Capstone Properties, LLC, and Phil McClanahan, trustee of the PEMR Trust, own a commercial center located in Paradise Valley, Arizona, and consisting of three buildings—the northeast building, the northwest building, and the rear building. On October 21, 2018, a storm caused the roof on the northeast building to collapse. Three Generations, LLC, dba Stevan's Consignment ("Tenant") leased the northeast and

northwest buildings, and after the roof collapsed, Tenant stopped paying rent under the lease agreement until repairs were substantially complete. When such repairs were not complete by April 11, 2019, Tenant declared constructive eviction and terminated the lease for both buildings.

Plaintiffs had entered into an insurance agreement for all three buildings with Defendant Owners Insurance Company, and the single Policy included liability and property coverage for all three buildings. The day after the roof collapse, Plaintiffs reported a claim with Defendant, and Defendant in turn determined that the roof collapse was covered under a "Collapse" provision of the Policy.

Because the parties could not agree on the extent of coverage under the Policy, Plaintiffs brought this lawsuit raising three claims against Defendant: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; and (3) insurance bad faith. (Doc. 36, Am. Compl.) Each party moved for summary judgment on the question of the extent of coverage under the Policy. (Doc. 59, Pls.' MSJ; Doc. 61, Def.'s MSJ.) The Court granted in part and denied in part Plaintiffs' Motion for Summary Judgment Re Collapse Coverage and granted in part and denied in part Defendant's Cross-Motion for Partial Summary Judgment Re Coverage Issues. The Court now examines the admissibility of the testimony of the parties' expert witnesses on the subject of insurance claim handling.

## II.   LEGAL STANDARD

Rule 702 tasks the trial court with ensuring that any expert testimony provided is relevant and reliable. *Daubert v. Merrell Dow Pharm., Inc.* (*Daubert*), 509 U.S. 579, 589 (1999). "Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action." Fed. R. Evid. 401. The trial court must first assess whether the testimony is valid and whether the reasoning or methodology can properly be applied to the facts at issue. *Daubert*, 509 U.S. at 592–93. Factors to consider in this assessment include: whether the methodology can be tested; whether the methodology has been subjected to peer review; whether the methodology has a known or potential rate of error; and whether the

methodology has been generally accepted within the relevant professional community. *Id.* at 593–94. "The inquiry envisioned by Rule 702" is "a flexible one." *Id.* at 594. "The focus . . . must be solely on principles and methodology, not on the conclusions that they generate." *Id.* at 595.

The *Daubert* analysis is applicable to testimony concerning non-scientific areas of specialized knowledge. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). However, the *Daubert* factors may not apply to testimony that depends on knowledge and experience of the expert, rather than a particular methodology. *U.S. v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000) (citation omitted) (finding that *Daubert* factors do not apply to police officer's testimony based on 21 years of experience working undercover with gangs). An expert qualified by experience may testify in the form of opinion if his or her experiential knowledge will help the trier of fact to understand evidence or determine a fact in issue, as long as the testimony is based on sufficient data, is the product of reliable principles, and the expert has reliably applied the principles to the facts of the case. *See* Fed. R. Evid. 702; *Daubert*, 509 U.S. at 579.

The advisory committee notes on the 2000 amendments to Rule 702 explain that Rule 702 (as amended in response to *Daubert*) "is not intended to provide an excuse for an automatic challenge to the testimony of every expert." *See Kumho Tire Co.*, 526 U.S. at 152. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citation omitted).

## III.   ANALYSIS

### A.   Kevin Hromas

In his report, Mr. Hromas indicates that he will testify on behalf of Defendant to:

   a.   The scope and reasonableness of Owners Insurance Company's claim handling during the investigation and continuing efforts in the resolution of the claim as found within the generally accepted insurance industry standards and guidelines, and,
   b.   The reasonableness of the assertions by the Plaintiff that the actions by Owners gave rise to violations of the Arizona Insurance Code and are thus subject to extra-contractual penalties.

1

2

      c.  The lack of factual support for Plaintiff's assertions that Owner's violated the Arizona Insurance Code or any other duties owed to the Plaintiff under Arizona law.

3

(Pls.' Mot. Ex. 1 ("Hromas Report") at 2–3.) Mr. Hromas bases his opinions on his claims

4

handling experience over his career in the insurance industry across multiple jurisdictions.

5

(Hromas Report at 1.) He is a licensed adjuster in eight states and previously worked as a

6

property claims manager at an independent adjusting firm. (Hromas Report at 1–2.)

7

Mr. Hromas opines that Defendant properly handled the claim at issue in this lawsuit.

8

(Hromas Report at 6.)

9

      Plaintiffs move to exclude the testimony of Mr. Hromas. (Pls.' Mot. at 1.) The crux

10

of Plaintiffs' argument is that Mr. Hromas does not provide an adequate basis for his

11

opinions, failing to explain "how or why he reached" his conclusions, such that the

12

opinions are not reliable or helpful. (Pls.' Mot. at 3–4.) Plaintiffs point out that in his

13

deposition, Mr. Hromas stated that he based his opinion that Defendant properly handled

14

the claim on "the totality of the claim file." (Pls.' Mot. at 4; Ex. 2 ("Hromas Deposition")

15

at 164:19–23.) Plaintiffs argue that Mr. Hromas fails to base his opinion on sufficient facts

16

or data, in that he could not answer certain questions about the claim in his deposition and

17

failed to include adequate factual details in his report. (Pls.' Mot. at 5–6, 9–13.)

18

Additionally, Plaintiffs point to excerpts from the deposition that seemingly indicate he

19

may not have had the entire claim file at the time he prepared his report. (Pls.' Mot. at 6-7.)

20

Finally, Plaintiffs argue that Mr. Hromas ignored issues with late payments in his report

21

and copied and pasted parts of his report from his previous opinions in other matters. (Pls.'

22

Mot. at 13–14.)

23

      Under *Daubert* and its progeny, the Court must ensure that expert testimony is based

24

on sufficient data, is the product of reliable principles, and the expert has reliably applied

25

the principles to the facts of the case. *See* Fed. R. Evid. 702. The Court is not required "to

26

admit opinion evidence that is connected to existing data only by the *ipse dixit* of the

27

expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *see also Voohries-Larson v.*

28

*Cessna Aircraft Co.*, 177 F.R.D. 462, 470 (D. Ariz. 1998) (excluding in part an expert's

opinion where the expert did not articulate or explain the reasoning behind his opinion on the cause of the accident); *TBL Collectibles, Inc. v. Owners Ins. Co.*, 285 F. Supp. 3d 1170, 1190–91 (D. Colo. 2018) (excluding expert opinion where the expert failed to explain the basis for each conclusion).

The Court agrees with Plaintiffs in part. For example, Mr. Hromas states that he will testify to "[t]he reasonableness of the assertions by the Plaintiff that the actions by [Defendant] gave rise to violations of the Arizona Insurance Code and are thus subject to extra-contractual penalties" (Hromas Report at 2), yet he does not provide the factual basis for this testimony or explain how his experience informs this testimony. In addition, this testimony would be an impermissible legal conclusion. *See Muhktar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1065 n.10 (9th Cir. 2002) ("However, an expert witness cannot give an opinion as to her legal conclusion, *i.e.*, an opinion on an ultimate issue of law.").

Additionally, general statements like the "totality of the claim file" do not show that the expert has applied "reliable principles and methods" to the facts of the case. Fed. R. Evid. 702. The Court's gatekeeper role requires the Court to "ensure the reliability and relevancy of expert testimony" in light of the particular facts and circumstances of the particular case, *Kumho Tire Co., Ltd.*, 526 U.S. at 152, which it cannot do when an expert's stated basis for his opinion is as conclusory as "the totality of the claim file." Thus, to the extent that Mr. Hromas does not state the factual basis for his opinions, supports his conclusions with only "the totality of the claim file," or attempts to state a legal conclusion, the Court will exclude his testimony.

However, to the extent that his opinions are supported by facts or data articulated in his written report, or to the extent he explains how his experience leads to an opinion, Mr. Hromas may testify regarding these opinions. For example, he may testify regarding whether it was reasonable for Defendant to have an additional contractor to prepare a third bid with additional detail, as discussed on page 5 of his report. At trial, Plaintiffs may cross-examine Mr. Hromas regarding the other issues noted in their Motion, such as whether

Mr. Hromas had the entire claim file when he prepared his report, but those issues are not a basis to exclude Mr. Hromas's testimony in its entirety.

**B.      Peter Kochenburger**

Mr. Kochenburger, whose testimony Plaintiffs proffer, is the Executive Director of the Insurance Law LLM Program and an Associate Clinical Professor of Law at the University of Connecticut School of Law. (Def.'s Mot. Ex. 1 ("Kochenburger Report") ¶ 2.) He previously worked as in-house counsel at an insurance company. (Kochenburger Report ¶ 3.)

In his expert report, Mr. Kochenburger concludes that Defendant fell below industry standard by:

> (1) [I]gnoring its own policy language when evaluating and paying business interruption coverage for lost rents; (2) failure to appropriately investigate and unnecessary delays in adjusting the claim, and the failure to timely pay amounts that were either undisputed or that OIC had no adequate reason not to pay. These include damage related to the collapse and roof repair, as well as the claims for lost rent, loss of a tenant, lost value of tenant improvements, real estate broker fees, and anticipated tenant improvements for the replacement tenant; (3) failure to appropriately investigate and pay the water damage claim; and (4) mishandling its reservation of rights position and failing to rescind its Reservation after it had determined it was unsupported.

(Kochenburger Report ¶ 1.)

**1.      Legal Conclusions**

Defendant first argues that Mr. Kochenburger's opinions are based on his own contract interpretation and personal coverage opinion and that much of his opinion amounts to a legal opinion or scope-of-coverage opinion. (Def.'s Mot. at 7.) For example, Mr. Kochenburger states that the reasonableness of Plaintiffs' coverage position is a relevant factor in determining whether the insurer acted in bad faith, while Defendant contends that this statement is an attempt to opine on the scope of coverage. (Def.'s Mot. at 7.)

Defendant's contention that Mr. Kochenburger offers impermissible legal conclusions again raises the question of the extent to which an expert may offer opinions on matters that should lie with the jury. Federal Rule of Evidence 704 allows an expert to

express an opinion on an ultimate issue to be decided by the jury, but the Ninth Circuit has made clear that the propriety of an expert opinion on ultimate issues does not extend so far as to permit an expert to offer legal conclusions. *Muhktar*, 299 F.3d at 1065 n.10.

In the bad faith context, the Ninth Circuit has held that an expert may address the factual question of whether the insurer deviated from the industry standard, but not the ultimate legal issue of whether the defendant acted in bad faith. *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004). In *Hangarter*, the Court allowed an expert to testify that the defendant insurer departed from insurance industry norms, based in part on his understanding of state law, as the statutory provisions he referenced were "ancillary to the ultimate issue of bad faith." *Id.* at 1016–17. Similarly, the Ninth Circuit upheld a decision to allow an expert to testify to an insurer's handling of the claim compared to industry standards and its own claim manual. *King v. GEICO Indem. Co.*, 712 F. App'x 649, 651 (9th Cir. 2017). As a court in this District has noted, "[b]oth Arizona law and Ninth Circuit law recognize that experts in the area of insurance claim handling are proper, that they may testify regarding the application of industry standards to claim handling, and that they may refer to legal precedent to the extent necessary to explain the facts in their opinions." *Temple v. Hartford Ins. Co. of Midwest*, 40 F. Supp. 3d 1156, 1161 (D. Ariz. 2014). However, courts in this District have also excluded expert testimony in this area to the extent the expert provides an opinion on the "ultimate issue of law." *United Specialty Ins. Co. v. Dorn Homes Inc.*, 2020 WL 4464400, at *17 (D. Ariz. Aug. 4, 2020) (excluding portions of an expert report opining on the extent of covered damages and the meaning of a state case directly at issue).

The Court agrees with Defendant that, in certain instances, Mr. Kochenburger's report veers into legal conclusions. Specifically, the Court finds that Mr. Kochenburger offers a legal opinion when he states that Defendant "ignored its own policy language" regarding whether the policy covered rent for one or both buildings vacated by Tenant. (Kochenburger Report ¶ 14.) Here, Mr. Kochenburger impermissibly expresses an opinion on the extent of coverage, and the Court has already addressed this matter on summary

judgment. Thus, as with Mr. Hromas, the Court agrees that to the extent Mr. Kochenburger presents legal conclusions on the scope of coverage, those conclusions are inadmissible. The Court will grant Defendant's motion in part on this point.

### 2.    Unsupported Speculation

Defendant also argues that a number of Mr. Kochenburger's opinions are "unsupported speculation." (Def.'s Mot. at 9.) For example, Defendant takes issue with Mr. Kochenburger's opinion that Defendant "fell below the standard of care in failing to provide a better explanation to the insured with regard to the claims submitted and why certain claims were not covered." (Def.'s Mot. at 9.) Defendant points out that Mr. Kochenburger "is not able to say that this had any effect whatsoever on the claim," citing his deposition testimony. (Def.'s Mot. at 10.) Additionally, Defendant faults Mr. Kochenburger's opinion that Defendant's failure to obtain a coverage opinion fell below the standard of care. (Def.'s Mot. at 11.) Defendant argues that Mr. Kochenburger admits the standard of care does not require obtaining a coverage opinion in his deposition testimony, and he cannot say whether it impacted the claim handling, so the opinion is not relevant. (Def.'s Mot. at 11.)

In response, Plaintiffs argue that causation is not at issue and Mr. Kochenburger is not required to testify with certainty. (Pls.' Resp. at 14–16.) Here, the Court agrees with Plaintiffs. An expert may opine on an insurer's claim handling in relation to industry standards, *King*, 712 F. App'x at 651, as Mr. Kochenburger does here. Further, "certainty is not a requirement for admissibility." *Ericson v. City of Phoenix*, 2016 WL 6522805, at *5 (D. Ariz. Nov. 3, 2016). "In any area of science or social science . . . expecting an expert to reach a conclusion without the slightest doubt as to its accuracy is exceedingly unrealistic." *United States v. Rahm*, 993 F.2d 1405, 1412 (9th Cir. 1993). The Court sees no reason to exclude this testimony, but Defendant may cross-examine Mr. Kochenburger on the basis for his opinions.

Defendant also relies on *11333 Inc. v. Certain Underwriters at Lloyd's, London*, in which a court in this District found that Mr. Kochenburger's expert opinion "suffer[ed]

from fatal flaws in factual basis, methodology, and reliability." 261 F. Supp. 3d 1003, 1028 (D. Ariz. 2017). However, Mr. Kochenburger's current opinion differs from his opinion in *11333 Inc.*; for example, in that case the Court criticized Mr. Kochenburger's methodology because he based his opinions on an earlier claim involving different underwriters and a different policy. *Id.* There is no similar issue here, as Mr. Kochenburger focuses on the facts of the underlying claim, and the Court does not find *11333 Inc.* persuasive. The Court will thus deny Defendant's motion on this point.

IT IS THEREFORE ORDERED granting in part and denying in part Plaintiffs' *Daubert* Motion re Kevin Hromas (Doc. 98).

IT IS FURTHER ORDERED granting in part and denying in part Defendant's Motion to Exclude Opinions and/or Testimony of Peter Kochenburger (Doc. 101).

Dated this 22nd day of November, 2021.

Honorable John J. Tuchi
United States District Judge

- 9 -